FILED
00 MAY -4 AM ?:??
U.S. DISTRICT COURT
N.D. OF ALABAMA

## United States District Court
## Northern District of Alabama
## Western Division

| | | |
|---|---|---|
| **Shelley Nicole Vaughn,** | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | CV-99-N-0897-W |
| | ] | |
| **Boston Mutual Life Insurance Company, et al.,** | ] | |
| | ] | |
| Defendants. | ] | |



ENTERED
MAY 0 4 2000

### Memorandum of Opinion

Plaintiff, Shelley Nicole Vaughn ("Vaughn"), brings this action against Boston Mutual Life Insurance Company ("Boston Mutual") and MEGA Life and Health Insurance Company ("MEGA"). In five counts, she asserts claims for: (1) breach of an insurance contract for failure to pay a claim; (2) bad faith failure to pay a claim; (3) negligent and/or wanton supervision; (4) outrage; and (5) conversion. In addition to her demand for damages, the plaintiff also seeks a declaratory judgment directing, *inter alia*, the payment of medical expense benefits arising out of injuries she allegedly received in an automobile accident. The court now has for consideration the defendants' motion for summary judgment that was filed on March 10, 2000. (Docket Entry #41). The motion has been fully briefed and was submitted for decision on April 11, 2000. Having thoroughly reviewed the briefs and other submissions, the defendants' motion for summary judgment will be granted in all respects and the action will be dismissed with prejudice.

68

I.  **Statement of Facts.**[1]

From August 15, 1998 to August 19, 1999, the plaintiff was enrolled and purchased coverage under a medical expense insurance policy issued by defendant Boston Mutual. During all times material to this action, defendant MEGA processed claims for medical benefits made by individual students, such as Vaughn, who were enrolled for coverage under a policy of insurance issued to the University of Alabama and underwritten by Boston Mutual. The policy contained an exclusion for expenses covered by any other valid and collectible medical, health, or accident insurance, and a subrogation clause. On September 10, 1998, while she was an insured person under the pertinent Boston Mutual policy, the plaintiff was injured in an automobile accident.

Beginning in September of 1998, the defendants began receiving claims from various healthcare providers for medical treatment rendered to the plaintiff as a result of injuries sustained by her in the accident.[2] Within six weeks of the first medical claim presented to the defendants, the plaintiff and defendants began corresponding. On or around the first of November, MEGA, on behalf of Boston Mutual, sent four letters to the plaintiff, through which it sought information which the defendants contend was necessary in order to process the plaintiff's claims.[3] According to the plaintiff, three of these letters were sent

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied, USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

[2] After carefully reviewing the record, the court has found that between September of 1998 and June of 1999, the defendants received approximately nineteen claims for payment of medical expenses on behalf of the plaintiff from various medical providers.

2

to an incorrect address. The one letter that the plaintiff acknowledges she received asked to respond to several questions: (1) whether she intended to file a claim against the insurance company which covered a second vehicle that was involved in her accident; (2) whether she had made a claim under any other insurance company or against any other person or company as a result of her accident, and if so, the name of such person or company and the status and other detailed information with regard to such claim; and (3) whether there were any other insurance companies or third parties involved that might reimburse her, pay her for any damages or make any other payment with regard to her accident.

In December of 1999, after it had not received a response from Vaughn, the defendants re-issued the above letter, as well as another letter which included a medical information authorization form, questions relating to the date, cause of and circumstances surrounding her accident, and the name, address and policy number of any other insurance which might have been liable for payment of the claimed expenses. Ms. Vaughn admits that she received both letters. During this period there were several telephone calls between Vaughn and the defendants concerning various matters. She did not provide the requested information by telephone, but contends that in none of these calls was she asked about it.

Shortly after receiving the December 1999 letters, the plaintiff faxed to her attorney, Harry Renfroe, Jr. ("Renfroe"), handwritten responses to the defendants' questions. On December 28, 1998, Renfroe faxed a letter to Nick Trovada ("Trovada") of MEGA in which

---

[3] In one of these, MEGA sought information from the University of Alabama as to the plaintiff's status as a student. The requested information was received on November 16, 1998.

3

he stated that he represented Vaughn. He demanded that payment of the medical claims be made and, in the absence of payment, a reference to the specific portion of the policy under which such claims were excluded from coverage. According to the plaintiff, Renfroe also provided Trovada with answers to three of the ten questions contained in the correspondence from the defendants (date of accident, nature of accident/injury, and complete name, address and phone number of attorney). However, the plaintiff's handwritten responses were not submitted.

On January 4, 1999, the defendant mailed additional correspondence to the plaintiff concerning her claim. On January 7, 1999, Renfroe faxed another letter to Trovada requesting the status of his earlier letter and specifically inquiring whether plaintiff's claims for medical benefits would be paid. Similar to his earlier response, beyond the information pertaining to the date of the accident, the nature of accident/injury, and the complete name, address and phone number of her attorney, Renfroe failed to provide the defendants with answers to the other questions. This was so despite the fact that he had received Vaughn's handwritten responses approximately one month before.

During the first week of February 1999, the defendants made notes in their file that certain claims would be closed pending receipt of additional information from the plaintiff. On February 9, 1999, the defendants sent a letter to Mr. Renfroe addressing the policy's subrogation provision and exclusion. The letter also indicated that before her claims would be processed, an explanation of benefits from the other insurance carriers or letters of denial if the carriers were not paying Vaughn's claims would be required. During this same

period, the defendants informed various medical providers that it could not process the plaintiff's claims until it received certain information from the plaintiff.

On March 4, 1999, plaintiff filed a complaint against Boston Mutual in the Circuit Court of Tuscaloosa County, Alabama. On May 4, 1999, Renfroe informed counsel for the defendants that the plaintiff did not have any other type of health insurance that would have paid any of the claims at issue. Following this conversation, defendants' counsel wrote five letters to Renfroe seeking written confirmation that there was no other insurance which would cover Vaughn's claims. On July 28, 1999, the defendants received a letter from plaintiff's counsel declaring that Vaughn's claims would not be covered by any other person or insurance carrier. In August of 1999, the defendants issued checks to plaintiff's medical providers in payment of the amounts due those providers under the terms of the insurance policy at issue.[4]

## II. Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the

---

[4] The court is simply at a loss to understand Mr. Renfroe's conduct in this matter. Given the evidence of the defendants' repeated efforts to determine whether its coverage was primary or secondary, Mr. Renfroe's withholding of the answers to the defendants' inquiries until after suit was filed, his almost immediate provision of the answers after suit was filed, albeit orally, and the defendants' payment of the claims within a very short period after receipt of written answers, suggests that Mr. Renfroe may have been less interested in helping his client than he was in suing the defendants.

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Where the nonmoving party will bear the burden of proof at trial, there is no requirement, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323. "Instead, the moving party simply may '"show[ ]"--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir.1991) (*en banc*) (quoting *Celotex*, 477 U.S. at 324); *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (same); *Young v. City of Augusta*, 59 F.3d 1160, 1170 (11th Cir. 1995). However, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats and Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must instead make an "affirmative showing" that crucial evidence is missing "by reference to any combination of the following: pleadings; deposition testimony of a party or its witnesses; affidavits; responses to interrogatories . . . ; requests for admission . . . ; and any other exchanges between the parties that are in the record." *Cheatwood v. Roanoke Industries*, 891 F. Supp. 1528, 1533 (N.D. Ala. 1995) (Hancock, J.).

"Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. If the moving party shows the absence of a triable issue of fact by either

6

method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Four Parcels of Real Property*, 941 F.2d at 1437-38 (11th Cir.1991).

At this stage, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Id.* at 324. The nonmoving party must make a specific, affirmative showing that a genuine factual dispute exists. If the required showing is not made, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

After the plaintiff has responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not

7

himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. Discussion.

### A. Breach of Contract.

Under general principles of Alabama contract law, a plaintiff can establish a breach of contract claim by showing: (1) the existence of a valid contract binding the parties in the action; (2) his own performance under the contract; (3) the defendants' nonperformance; and (4) damages. *Southern Medical Health Systems, Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995). Even though the defendants have paid the plaintiff's claims in full, the Alabama Supreme Court has recognized that an unjustified delay in payment can form the basis for a claim of breach of contract. *United Ins. Co. of America v. Cope*, 630 So. 2d 407, 411 (Ala. 1993) (insurer has obligation to pay valid claims under policy and to do so without unreasonable delay); *Harrington v. Guaranty National Ins. Co., et al.*, 628 So. 2d 323 (Ala. 1993); *See also Shufford v. Integon Indemnity Corp., et al.*, 73 F. Supp. 2d 1293 (M.D. Ala. 1999); *See also Liberty National Life Ins. Co. v. Allen*, 699 So. 2d 138 (Ala. 1997).

As noted, the Alabama courts have held that an "unjustifiable" or "unwarranted" delay may constitute a breach of contract. The plaintiff essentially argues that Boston and MEGA unreasonably delayed payment of her claims. Defendants, on the other hand, argue that it was the conduct of Vaughn and her attorney, that caused the delay. They assert that the claims could not have been properly processed and paid without the required information. They rely primarily on two provisions of Vaughn's policy:

> TIME OF PAYMENT OF CLAIMS: Benefits payable under this policy will be paid as they accrue and as soon as due written proof of such loss has been received by us.
> . . .

9

> This Policy does not cover nor provide benefits for . . . (31) expense covered by any other valid and collectible medical, health, or accident insurance.

The defendants attribute any delay in the processing and payment of the plaintiff's claims to Renfroe's unwillingness to provide the defendants with the requested information concerning the possible existence of coverage by other carriers.

In response, the plaintiff contends that despite the failure to disclose such information, any delay was unjustified as the defendants had the requisite information it needed to process the plaintiff's claims. In particular, Vaughn asserts that the defendants did not pay the benefits immediately after the proofs of loss were received. This argument is unpersuasive and is inconsistent with the policy language itself, as well as decisions of both the Alabama Supreme Court and United States Court of Appeals for the Eleventh Circuit.

With regard to the policy, it is axiomatic that regardless of whether a proof of loss is presented, the defendants were obligated to pay only benefits that were payable under the terms of the policy. More importantly, under Alabama law, assuming that the defendants received notice and proof of loss, they were allowed to form an intelligent estimate of their rights and liabilities as well as conduct an investigation of the claim. *Stonewall Ins. Co. v. Lowe*, 284 So. 2d 254, 256 (Ala. 1973); *St Paul Fire & Marine Ins. Co. v. Tinney*, 920 F.2d 861, 863 (11th Cir. 1991)(the purpose of requiring information when the claim is made is to afford the insurer an opportunity to investigate). Thus, when they received the plaintiff's proof of loss form, the defendants were not required to automatically and immediately pay the claims. Rather, they were entitled to conduct a reasonable

investigation to determine whether the claims were covered under the policy. Moreover, the defendants were entitled to expect that the plaintiff (and her attorney) would cooperate with them in determining whether the claims were covered.

The evidence is clear. The plaintiff is unable to create a genuine issue of material fact regarding her breach of contract claim and the defendants are entitled to summary judgment on the claim.

### B. Bad Faith.

In order to succeed on her bad faith claim the plaintiff must first prove the defendants breached their insurance contract with her. *National Security Fire and Casualty Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982)(holding that breach of contract is a necessary element in a bad faith failure to pay claim). Because the defendant did not breach its contract with the plaintiffs, no action for bad faith will lie. Thus, the defendants' motion for summary judgment on the bad faith failure to pay claim will be granted, and the plaintiff's bad faith claim will be dismissed with prejudice.

However, had the court found a sufficient factual question to preclude summary judgment on the contract issue, the plaintiff's bad faith claim would still fail. In order to prove a bad-faith failure to pay an insurance claim, plaintiff must prove: (1) an insurance contract between the parties and a breach thereof by the defendant; (2) an intentional refusal to pay the insured's claim; (3) the absence of any reasonably legitimate or arguable reason for that refusal; (4) the insurer's actual knowledge of the absence of any legitimate or arguable reason; and (5) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine

whether there is a legitimate or arguable reason to refuse to pay the claim. *Bowen*, 417 So. 2d at 183.

The defendants contend that there is no evidence to create a sufficient question of fact as to the second and third elements for bad faith. As has already been articulated, the defendants contend that any delay in pay was caused by the failure of the plaintiff and her attorney to respond to questions concerning other insurance. The undisputed evidence indicates that once the questions were answered in writing, the plaintiff's bills were paid within weeks. Additionally, the evidence demonstrates that from November of 1998 until the payments were made in August of 1999, the defendants, or their counsel, had regular contact with the plaintiff or her attorney in an attempt to obtain the required information and process the claim.

In response, the plaintiff asserts that the defendants did not undertake a good faith effort to marshal all the facts necessary to make a timely decision regarding the plaintiff's claims. That argument borders on the frivolous. The undisputed evidence demonstrates that the plaintiff's attorney actually withheld information which would have at least assisted the defendants in making a timely decision. There is no evidence from which the court could infer that the defendants intentionally delayed or refused to pay the plaintiff's claims. Accordingly, the defendants are entitled to summary judgment as to the plaintiff's bad faith claim.

### C.     Negligent and/or Wanton Supervision.

Under Alabama law, an employer may be held accountable for the incompetence of its employees when he has notice or knowledge, whether presumed or actual, of such

incompetence. *Big B, Inc. v. Cottingham*, 634 So. 2d 999 (Ala. 1993). As we have found no breach of contract or bad faith, it logically follows that there is no genuine question of fact as to whether the defendants or any of their employees incompetently handled the plaintiff's claims. Here, it has been established that employees of the defendant were justified in their efforts to obtain certain information from the plaintiff. Moreover, it is undisputed that such information was not turned over to the defendants' in writing until July of 1999. As such, it can hardly be said that the defendants conduct was inadequate. Accordingly, the defendants are entitled to summary judgment as to the plaintiff's negligent supervision claim.

### D. Tort of Outrage.

Recovery of damages for the tort of outrage is limited "to the most reprehensible situations." *State Farm Automobile Ins. Co. v. Morris*, 612 So. 2d 440, 443 (Ala. 1993). In *American Road Service Co. v. Inman*, 394 So. 2d 361, 365 (Ala. 1980), the court stated that the test to determine the tort of outrage was the presence of "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from distress." Stated in a different way, the defendant's conduct must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Inman*, 394 So. 2d at 365.

Upon carefully reviewing the evidence, the court finds no significant evidence which even remotely suggests outrageous conduct or the intentional infliction of emotional distress on the part of the defendants.

### E. Conversion.

In a final flight of fancy, the plaintiff asserts that the defendants converted her property to their own use. Under Alabama law, to support a claim for conversion, one must prove (1) a wrongful taking; (2) an illegal assumption of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property. *Gillis v. Benefit Trust Life. Ins. Co.*, 601 So. 2d 951, 952 (Ala. 1992). The plaintiff contends that the defendants' actions in failing to pay her medical expenses in a timely manner resulted in a wrongful detention or interference with her insurance proceeds, thereby satisfying a requirement that conversion constitutes a wrongful detention or interference with her property. In particular, the plaintiff alleges that Boston Mutual's conduct prevented her from negotiating an uninsured motorist benefit check, which, because Boston had not paid one of her claims, had been issued to her and DCH Regional Medical Center as co-payees.

Even giving the plaintiff every reasonable inference, her conversion claim does not survive summary judgment. Foremost the plaintiff has failed to adequately respond to the defendants' meritorious arguments that the plaintiff made a conscious decision to refrain from negotiating the check, that the defendants never exerted control over the check, never had possession of the check, or ever had any contact with the check. Additionally, the plaintiff's vague allegations and conclusions concerning the events surrounding the check

also make summary judgment appropriate. Accordingly, there being no genuine issue of material fact as to the plaintiff's conversion claim, the defendants' motion for summary judgment as to this claim will be granted.

### F. Declaratory Judgment.

In her responsive submission, the plaintiff explicitly foregoes seeking a specific order or ruling from the court. Accordingly, the court finds the declaratory judgment issue moot.

### IV. Conclusion.

Under Alabama law, an insurer has explicit authority to determine its rights and liabilities under an insurance contract and to conduct an investigation in furtherance of its rights. In light of such right to investigate, the court finds there is no genuine issue of material fact so as to save the plaintiff's breach of contract claim. Similarly, the court finds summary judgment is warranted in favor of the defendant as to the plaintiff's bad faith, outrage, negligent hiring/supervision, and conversion claims.

By separate order, the defendants' motion for summary judgment will be granted and the action will be dismissed with prejudice. Costs will be taxed against the plaintiff and in favor of the defendants.

Done, this 3rd of May, 2000.

Edwin Nelson
United States District Judge